In re Estate of Lewis A. Cocklin.

No. 45998.

September 22, 1942.

R. J. Swanson and Floyd E. Billings, both of Red Oak, and Roscoe S. Jones, of Atlantic, for appellant.

John R. DeWitt, of Griswold, and Dalton & Dalton, of Atlantic, for appellees.

Mitchell, J.—Lewis A. Cocklin died a resident of Griswold, Cass county, Iowa, on August 10, 1940. He left a surviving spouse, Margaret Cocklin, but left no direct heirs. His only heirs at law are his surviving brothers and sisters. He had been sick for more than a year, suffering from cancer of the

liver. On August 10, 1940, a will made and executed by Lewis A. Cocklin on February 3, 1940, was filed for probate. On the 16th day of August 1940, Fanny Watkins, a sister of Lewis A. Cocklin, filed objections to the probating of her brother's will. On January 8, 1941, the contestant filed amended and substituted objections, alleging therein, first, lack of testamentary capacity, and second, undue influence. The case was tried to a jury upon said issues. The trial was commenced on June 16, 1941. Many witnesses, both on behalf of the proponents and the contestant, testified. At the close of the contestant's evidence, a motion for directed verdict was made by the proponents, which was overruled, and at the conclusion of the taking of all of the evidence, the motion for a directed verdict was renewed and overruled and the case submitted to the jury. The jury returned a verdict for the proponents, and the contestant Fanny Watkins has appealed.

There are but two errors argued by the appellant why the case should be reversed. First, it is contended that the court committed prejudicial error in not permitting the attorneys for the contestant to open and close the arguments to the jury. After the evidence was all taken and both sides had rested, the contestant asked that her attorneys be allowed the right to open and close the arguments. This request was denied by the trial judge, to which the contestant objected. The proponents were permitted to open and close the arguments to the jury.

While the contestant raised no question as to the formal execution of the will, nowhere did she concede that it had been properly executed. In the instructions to the jury the trial court said, we quote:

"There is no pleading or evidence in denial of the execution of said purported will of said Lewis A. Cocklin in controversy and the execution of said will by said Lewis A. Cocklin is to be taken by you as established."

The trial court submitted to the jury the only questions for it to decide when in its instructions it said, we quote:

"There are just two questions for you as jurors to determine in this case:

"First: Did the testator, Lewis A. Cocklin, at the time he signed and executed the purported last will and testament referred to in evidence as exhibit one, have testamentary capacity to make a will?

"Second: Was said purported will procured by undue influence practiced upon the testator by C. T. Cocklin and Harvey Cocklin?"

These were the only two questions for the jury to decide, and the burden of proof was placed upon the contestant, the appellant in this court. She asked that her attorneys be permitted to open and close the arguments to the jury, and proper objection was made when that was denied.

This court was confronted with the question of the right to open and close the argument in a will contest in the case of In re Estate of Wharton, 132 Iowa 714, 722, 109 N. W. 492, 496. In the opinion we find this language:

"Error is assigned in allowing to contestant the opening and closing of the argument to the jury. But there was no controversy in the evidence as to the fact of the execution of the will, the only issues submitted to the jury being as to mental capacity, and undue influence, and there was no error, therefore, in holding that the burden was on contestants which would entitle them to the opening and closing."

In the case of O'Conner v. Kleiman, 143 Iowa 435, 438, 121 N. W. 1088, 1089, this court said:

"Section 3701, Code, provides: 'In the argument, the party then having the burden of the issue, shall have the opening and closing.' Under this section the defendant was clearly entitled to open and close the argument, in view of the burden of proof which the instructions of the court laid upon him. The contention of plaintiff is that the general denial contained in defendant's answer left the burden upon him, and therefore he was entitled to open and close. This contention can not be sustained. The issue at this point is to be determined by the state of the evidence. Shaffer v. Des Moines Coal Co., 122 Iowa, 233; Schoonover v. Osborne, 117 Iowa, 427. In the state of the evidence, and under the instructions as the court gave them, the

clear and complete burden was laid upon the defendant; and, under the burden laid on him by the instructions, he would have been entitled to open and close even though his general denial had not been qualified by an express admission of the signing of the note. This is a question of procedure, however, on which we are always reluctant to base a reversal. As a rule, large discretion must be permitted on such a question to the trial court, and we will not reverse on such ground, unless an abuse of discretion and prejudice appear. In view of the fact that the trial court erroneously laid upon the defendant an undue burden of proof, as will be indicated in another paragraph, it emphasized the right of the defendant to open and close, and necessarily emphasized the prejudice resulting from the court's refusal to permit it, and the defendant is clearly entitled to a reversal on one ground or the other."

Section 11487 of the 1939 Code of Iowa provides as follows:

"* * * In the argument, the party then having the burden of the issue shall have the opening and closing * * *."

Clearly, in this case, under the record, where there was no contest as to the proper execution of the will and where the court in its instructions stated that there was "no pleading or evidence in denial of the execution of the will," and rightfully placed upon the contestant the burden of proving the two questions which the jury were to determine—first, whether Lewis A. Cocklin had testamentary capacity to make a will, and second, whether there was undue influence practiced upon the testator—the contestant had the legal right to open and close the argument and should have been given that right by the court. But, as said in the case of O'Conner v. Kleiman, supra:

"This is a question of procedure, however, on which we are always reluctant to base a reversal. As a rule, large discretion must be permitted on such a question to the trial court, and we will not reverse on such ground, unless an abuse of discretion and prejudice appear."

The court is of the opinion in the case at bar that there

was not such an abuse of discretion or showing of prejudice as would justify this court in reversing the case on this ground.

It is next argued that the lower court erred in giving orally what is referred to in the cases as a "verdict urging instruction." The trial in this case commenced on June 16, 1941. Evidence was taken from day to day, up to and including June 26, 1941, on which day the arguments to the jury commenced. They were concluded about 6 p. m. on June 26, 1941, at which time court adjourned until 9 a. m. on June 27, 1941. The court then read its written instructions and the jury retired about 9:45 a. m. on June 27, 1941. The jury continued to deliberate during that day and night and most of the following day. It was composed of ten women and two men. At about 4 p. m. on June 28, 1941, which was Saturday afternoon, after the jury had deliberated for better than 29 hours, the trial court called the jury into the jury box and gave to them orally the following instruction:

"The Court: Now, Members of the Jury, I called you for the purpose of talking to you briefly along the following lines:

"On June sixteenth, 1941, thirteen days ago, the trial of this case started. Nearly nine days were consumed in the trial. You have now deliberated about thirty hours.

"Now, this cause was well and ably tried, there were many witnesses and much testimony. Now, this case is important from many angles. This will was filed for probate nearly eleven months ago, a large amount of property is involved, including several businesses. Quite a number of people are interested in the validity or invalidity of this will. There are but two issues, they are clear-cut and well defined, to wit: On February the third, 1940, was Lewis A. Cocklin mentally competent to make the will in controversy, and on the same date did he make said controverted will freely and voluntarily?

"You have heard the evidence, and the law has been set out to you in the instructions. Before you heard any evidence you took an oath to hear and determine the issues fairly and impartially by the evidence, and the instructions given to you by the court.

"If you do not arrive at a verdict then we will have what is termed a hung jury, or a disagreement, and upon that hap-

pening the case will stand as it did before this trial. It would then mean that it is likely the case would have to be tried again to another jury, and very likely the next jury would have the same evidence in the main and would have substantially the same arguments, and receive instructions quite similar to the one I have given you, and it is fair to assume that the next jury would not be in a better position to judge than you are. Then there would be the delay, the interference with the business and the various enterprises involved, and not the least, the expense of another trial, both to the parties and the taxpayers of this county.

"As I stated to you in the instructions, you should approach the subject without bias, prejudice or sympathy and should lay aside any pride of opinion you may have or entertain at this time.

"It seems to me that each of you should carefully consider any opinion you may have formed and ponder upon it as to whether you can conscientiously sustain said opinion in the light of the evidence and the law as given you in the instructions. As jurors your duty is to decide this case fairly and justly upon the evidence and the law and carefully disregarding anything else. Each of you on your oath promised to do so.

"You will return to your jury room and there continue deliberations. I hope you will do so in the light of the oath you have taken before the evidence was offered.

"In case you fail to arrive at a verdict today you will be taken to sleeping quarters provided for you for the night. While so situated do not attempt to communicate with any other person save your fellow jurors or the bailiffs having you in custody. Following such period you will continue your deliberations.

"That is all I have to say to you, Ladies and Gentlemen. Now you may retire with the bailiffs."

Following the giving of the instruction the record shows the following:

"The Court: Let the record show that attorneys for both sides were present, and that these instructions were given with their acquiescence and consent."

There is a dispute in the record in regard to whether or not the attorneys representing the contestant were aware or heard the dictating into the record by the court that they acquiesced in the instruction, but the record does show that one of the attorneys representing the contestant was present and made no objection to the giving of the instruction. However, we do not base our opinion upon this fact.

The first objection raised by the contestant to the "verdict urging instruction" is that it defined the issues in the case, and therefore, under section 11506 of the Code of Iowa, it was required to be in writing. We cannot agree with the contestant that the oral instruction undertook to state the issues in the case. The court had instructed the jury in writing upon all of the issues involved. No objection is made to the instructions and it is not argued in this appeal that the court erred in the giving of the written instructions. In the oral instruction the court simply repeated what the issues were the jury was required to decide, and certainly this was not prejudicial because it merely correctly reminded the jury of the issues as set forth in the written instructions. The jurors apparently were not in doubt on any question of law, nor was the oral instruction intended to explain any points of law. The jury had made no request for any extra instruction, nor is there any claim that they misunderstood the instructions as given. The oral instruction was simply a cautionary instruction for the jury to agree if they properly could. In the case of Burton v. Neill, 140 Iowa 141, 145, 118 N. W. 302, 303, 17 Ann. Cas. 532, an oral instruction very similar to the one in the case at bar was given and this court said:

"The requirement that counsel be advised is no more obligatory than that the instruction be in writing, and it is quite uniformly held that the instructions which must be in writing under statutory requirements are only expressions of the principles of the law applicable to the case, or some branch or phase of the case, which the jury are bound to apply in order to render a verdict establishing the rights of the parties in accordance with the facts proven. Lehman v. Hawks, 121 Ind. 541 (23 N. E. 670); Moore v. City of Platteville, 78 Wis. 650 (47 N. W.

1055); State v. Jones, 7 Nev. 408; Boggs v. United States, 10 Okl. 424 (63 Pac. 969, 65 Pac. 927). These cases are selected from many which bear on the subject, because they involve just such an instruction to the jurors, with reference to their duty, as was given in this case. That general directions to the jurors as to their duty, not having any bearing upon the evidence which they are to consider and the law applicable thereto, are not instructions such as are required to be in writing under statutory provisions is illustrated by many cases. See Johnson v. Rider, 84 Iowa, 50; Judge v. Jordan, 81 Iowa, 519; State v. McLafferty, 47 Kan. 140 (27 Pac. 843); State v. Potter, 15 Kan. 302; McCallister v. Mount, 73 Ind. 559; Stanley v. Sutherland, 54 Ind. 339, 354. Many other cases are cited in 1 Blashfield on Instructions, sections 119–122. The court committed no error, therefore, in giving the direction to the jury without notice to counsel which would enable them to be present.''

In the quoted case this court held that an instruction such as the one that was orally given in this case was not required to be in writing, and it is the view of this court as it is now composed that a ''verdict urging instruction'' which does not define the issues in the case does not have to be in writing. The court believes that it would be far better if the ''verdict urging instruction'' were given in writing, for it is a well-known fact that 12 members of a jury, after listening to an oral instruction and then returning to their jury room, will have different views as to just what the court said to them orally. If the jury is given a written instruction, then they will not have to rely upon their own memories, and there will be no conflict among them as to what the court told them.

It is next argued that the oral ''verdict urging instruction'' was coercive in its tone and nature and conveyed the idea to the jury that they must agree upon and return a verdict. This court has had before it on many occasions the question of whether it is proper or not to give a ''verdict urging instruction.'' In the case of Armstrong v. James & Co., 155 Iowa 562, 568, 136 N. W. 686, 688, where the cautionary instruction was very similar to the one in this case, this court, speaking through Judge Deemer, said:

"But it is common knowledge that jurors, like other human beings, become stubborn, forget, or overlook the facts of a case, refuse to listen to the arguments of their fellow jurors, or to be governed by the testimony. An opinion hastily formed upon insufficient reflection is sometimes adhered to without other reason than that, having been once expressed, it must be adhered to. Again, jurors sometimes hang upon collateral and inconsequential matters which when fully explained yield to weightier and more direct facts. Stubbornness is often responsible for mistrials, and it is the duty of the presiding judge to secure verdicts, if possible. He is, or should be, something more than a mere moderator. He is the presiding genius of the trial, and, if he becomes convinced that jurors are working to no purpose, that they have forgotten their functions, or are failing to give the case proper consideration, it is his duty to set them right, and by proper instruction bring them to a realizing sense of their duties and responsibilities." (Citing cases.)

There is a very able minority opinion by Judge Weaver, which appeals very much to the writer of this opinion, in which he said, at page 573 of 155 Iowa, page 690 of 136 N. W.:

"The precedents cited in the majority opinion are nearly all cases in which the trial courts have approached dangerously near the exclusive province of the jury, but exceptions thereto have been overruled, not as much in approval of the instructions, as because of the fact that, under the peculiar circumstances of the individual cases, no prejudice to the appealing party could be presumed. The chief trouble with the majority opinion is in the fact that it collects all these inconclusive decisions and marshals them in a manner to invite trial courts to still further incursion into a field which by statute and by the common law from time immemorial has been held to belong to the jury alone. On this ground I would reverse the judgment appealed from."

In the case of State v. Gillam, 230 Iowa 1287, 300 N. W. 567, a "verdict urging instruction" containing even stronger language than the one in the case at bar was approved by this court. Many cases are cited in that opinion. On three occasions, and only three, as far as we have been able to ascertain, has

this court seen fit to reverse upon the grounds of a "verdict urging instruction." In the case of Clemens v. Chicago, R. I. & P. Ry. Co., 163 Iowa 499, 506, 144 N. W. 354, 356, after the jury had been out about 50 hours, the court called them into open court and gave an instruction, part of which we quote:

"This case must be decided by some jury, selected in the same manner this jury was selected, and there is no reason to think a jury better qualified would ever be chosen, or that more or clearer evidence would ever be submitted. Every juror should listen to the argument of other jurors with a disposition to be convinced by them, and, if any of the jury differ in their views of the evidence from a larger number of their fellow jurors, such difference of opinion should induce the minority to doubt the correctness of their own judgment and cause them to scrutinize the evidence more closely and to re-examine the grounds of their opinions."

After the submission of the instruction to the jury, they retired for further deliberation and remained out about 20 hours longer. It will be noted that in the Clemens case the instruction given urged the jurors that if their views differed from the views of a large number of their fellow jurors, it should induce the minority to doubt the correctness of their own judgment. In other words, the instruction in the Clemens case was far stronger than the one in the case at bar. In addition to this, the long hours that they were held together, 50 hours before the instruction was given and 20 hours afterward —a total of 70 hours of continual wrangling and arguing— must convince anyone that a verdict arrived at after such a length of time would not be a voluntary verdict of a jury. As the court in the Clemens case said, at page 508 of 163 Iowa, page 357 of 144 N. W.:

"Fifty hours is a long time for men, who are accustomed to the outdoor life, to daily physical exercise, to be confined in a small room, often illy ventilated. Such confinement, of necessity, has a depressing effect upon them, rendering them incapable of exercising their intellectual faculties to the best purpose. It is wearisome to the body and depressing to the mind. To hold them in confinement for that length of time,

to then call them into court and tell them that, if they do not agree with the majority, they should 'doubt the correctness of their own judgment,' and 'should therefore scrutinize the evidence more closely, and re-examine the grounds of their opinion,' leads the mind to the more reasonable suspicion that they ceased further resistance, gave up their own convictions, and surrendered to the majority, than that they proceeded thereafter to the laborious and uncertain task of convincing themselves that they were wrong.''

Following the Clemens case, this court said in State v. Mulhollen, 173 Iowa 242, 248, 155 N. W. 252, 254:

''Complaint is made of the giving of Instruction No. 27. This was an additional instruction given to the jury after several hours of deliberation, and after the jury had reported its inability to agree. The instruction given was substantially the same as that involved in State v. Richardson, 137 Iowa 591. We have heretofore tolerated this instruction rather than commended it. To some members of the court, it is quite unsatisfactory, as being readily capable of abuse. Upon the facts appearing in Clemens v. Chicago, R. I. & P. R. Co., 163 Iowa 499, we disapproved of its use in that case. In the case before us, the evidence is so overwhelming and conclusive, as well as undisputed, that it is inconceivable that any candid juror could in good faith find any reasonable doubt of the guilt of the defendants. For that reason, if for no other, we think that the instruction could not have been prejudicial. There is better reason for approving the instruction in the case before us than there was in State v. Richardson, supra. We find no prejudicial error in the record, and the judgment of conviction is—Affirmed.''

In the case of State v. Peirce, 178 Iowa 417, 424, 159 N. W. 1050, 1054, this court, after reviewing many cases, lays down the following rule, we quote:

''We have intimated strongly that such instructions are erroneous if their language (1) indicates an intention to coerce into agreement, or (2) suggests that the jury would be kept together until it agreed. German Sav. Bank v. Citizens' Nat.

Bank, 101 Iowa 530, at 547; State v. McGhuey, 153 Iowa 308. The ultimate test would seem to be whether the additional instruction forced or helped to force an agreement, or whether it merely started a new train of real deliberation which ended the disagreement. In the Armstrong case, much stress is laid upon the fact that the jury requested additional instructions, after the first, alleged to have been coercive, had been given, of which it is said that it indicates that the merits of the case were being considered, and the jury 'had got to the very vitals thereof. * * * The instruction complained of did not of itself hasten the verdict. It did not come until the additional instruction was given.' It is further pointed out that the jury was reluctant to be discharged, and asked for further time.''

In the Peirce case, the additional instruction was given after the jury had been kept together for some 13 days and had been deliberating for some 48 hours. The instruction in the Peirce case contained the objectionable language that "being strongly in the minority should incline one to re-examine the ground of his opinion; that mere pride of opinion and spirit of controversy had no place in the jury box; that retrials were burdensome and expensive; that some jury must decide the case, and there was no reason to believe another would be better qualified than the present jury, or that it would have more or clearer evidence.''

In the opinion the court says at page 427 of 178 Iowa, page 1055 of 159 N. W.:

"The jurors here had been kept together by the bailiff some 11 days before they entered upon their deliberations in the jury room; after some 48 hours of disagreement, three stood for acquittal when the instruction was given; it was late on Saturday night; and it got into the jury room that the trial judge had gone home and out of town for over Sunday, and that, while there was a judge in town, he could only act to receive a verdict. It fairly had conveyed to it the idea that failure to agree meant confinement over Sunday, at least.''

In the recent case of Middle States Util. Co. v. Incorporated Tel. Co., 222 Iowa 1275, 1281, 271 N. W. 180, 184, 109 A. L. R.

66, this court, speaking through Judge Hamilton, after reviewing various cases decided by this court, said, we quote:

"The ground seems to be fairly well covered and little else need be added to set forth the views of this court concerning the giving of such an instruction. It should be noted that in none of the cases noticed was there a reversal because of the giving of said instruction, except in the Clemens case and the Peirce case, and in each of said cases prejudice was presumed, nothing appearing to the contrary, from the peculiar circumstances of the long period of incarceration of the jury. Nothing of that kind appears in the instant case. As pointed out in the Flory case and one or two other cases above referred to the following language: '*Every juror should listen to the arguments of other jurors, with a disposition to be convinced by them; and if any of the jurors differ in their view of the evidence from a larger number of their fellow jurors, such differences of opinion should induce the minority to doubt correctness of their own judgment, and cause them to scrutinize the evidence more closely and re-examine the grounds of their opinion,*' has been repeatedly condemned. This exact language was included in the instruction given in the instant case. The repeated condemnation on the part of this court of the use of this form of expression should prompt the trial court to deter from its further use and the disregard of such expressions of condemnation on the part of this court would in and of itself perhaps be sufficient grounds for reversal. However, it is not necessary to base reversal alone upon this phase of the matter in the instant case."

There is a very lengthy and exhaustive citation of authorities following the annotation of this court's decision in Middle States Util. Co. v. Incorporated Tel. Co., in 109 A. L. R. on page 72.

The court then reversed the case of Middle States Util. Co. v. Incorporated Tel. Co. because, upon polling the jury, one of the jurors replied that the verdict was not his verdict.

In the case at bar the instruction does not contain the objectionable language which we find in many of the cases cited. All of the language used has been approved by this court. The

court said to the jury that they took an oath to hear and determine the issues fairly and impartially, that they should approach the subject without bias, prejudice, or sympathy, and, "As jurors your duty is to decide this case fairly and justly upon the evidence and the law and carefully disregarding anything else. Each of you on your oath promised to do so."

It is true that in the instruction the court says:

"In case you fail to arrive at a verdict today you will be taken to sleeping quarters provided for you for the night. While so situated do not attempt to communicate with any other person save your fellow jurors or the bailiffs having you in custody. Following such period you will continue your deliberations."

It would have been better if this part of the instruction had not been given, but it simply stated to the jury that if they did not agree they would be given sleeping quarters. No doubt the reason for inserting this was the fact that on the night before the jury had not been furnished sleeping quarters.

The court also submitted to the jury two special interrogatories, which were as follows:

"First: Did Lewis A. Cocklin at the time he signed and executed the instrument in question, possess testamentary capacity? ANSWER: *Yes.* (Signed) MRS. WILL BARNARD, *Foreman.*

"Second: Was the execution of the instrument in question procured by the exercise of undue influence on the part of C. T. Cocklin or Harvey Cocklin? ANSWER: *No.* (Signed) MRS. WILL BARNARD, *Foreman.*"

The special interrogatories above set out were answered in writing after the oral instruction had been given. These special interrogatories again told the jury in writing what the issues were and the jury answered each issue in writing. There can be little question but that the jury knew what the issues were and decided same in accordance with the court's written instructions. After the verdict was read in open court, the jury was polled and each juror answered that it was his or her verdict. The jury deliberated five or six hours after receiving the cautionary instruction, and when the bailiff went to the jury

to take them to the hotel room for the night they asked him to wait for awhile as they thought they would agree upon a verdict. In view of the fact that the jury deliberated a reasonable time after the cautionary instruction was given, that they answered the special interrogatories submitted to them, that they were polled after the verdict was returned and each member of the jury responded that it was his or her verdict, we come to the conclusion that there is no showing in this record of any prejudicial error in the giving of the "verdict urging instruction," and it necessarily follows that this case must be affirmed. The motion to strike proponents' amendment to abstract, which was submitted with the case, is sustained.— Affirmed.

WENNERSTRUM, C. J., and STIGER, OLIVER, BLISS, MILLER, HALE, and GARFIELD, JJ., concur.