321 P.2d 202

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**David Cooper NELSON, Defendant-Appellant.**

**No. 6197.**

Supreme Court of New Mexico.

Jan. 28, 1958.

430

Rolando J. Matteucci, Avelino V. Gutierrez, Albuquerque, Mayo T. Boucher, Belen, for appellant.

Fred M. Standley, Atty. Gen., Paul L. Billhymer, Asst. Atty. Gen., Richard H. Robinson, Sp. Asst. Atty. Gen., for appellee.

KIKER, Justice.

█ The defendant, David Cooper Nelson, was charged with the murder of Ralph Henderson Rainey. A trial was had to a jury and a verdict of finding the defendant guilty of murder in the first degree without recommendation was returned. Judgment was entered by which the defendant was sentenced to death. This appeal resulted.

The defendant was arrested in Nevada and having been returned to New Mexico was first questioned by two state policemen, one of these being Chief Roach. The defendant made inquiry of Chief Roach whether he, the defendant, "would not fry if he copped a plea." Chief Roach confirmed the statement made by the defendant and stated that the law of New Mexico so provided. These statements were made in the presence of witnesses but not in the presence of the district attorney who had not gone directly to the defendant upon coming into the jail. After the district attorney joined the group, the defendant made first an oral confession and then a written one. Two days later he again confessed to two officers of the F.B.I.

Before trial the defendant made on two occasions a motion to quash the information. Both such motions were denied. The defendant then pleaded not guilty. As the first proposition upon which the defendant claims the right of reversal of the judgment of the lower court and a new trial is that the trial judge erroneously reminded the jury on at least four separate occasions that on voir dire each member of the jury had answered that in a proper case he would not be opposed to capital punishment.

The first of the occasions was after the jury had been out for three and one-half hours when it came into court where the trial judge read an answer to a question propounded by the jury. The question was:

"What does the record show in qualifying the jurors in regard to capital punishment? Regards the reply of each juror.

"s/  Members of the Jury"

In answer to this question the court said:

"The Court has checked the record in order to answer your question and finds that in each individual case in which each juror was questioned with respect to their identification with respect to capital punishment and the record shows that each juror stated that you had no objection to capital punishment in a proper case. The

Court admonishes you that there is no other questions that you can ask at this time, unless after your deliberations some other question comes up that you desire to refer to the Court record on but that is the record as it stands and each juror indicated when they were qualified as jurors that they had no objection to capital punishment in a proper case."

The jury was sent back to the jury room and there deliberated for another four hours and five minutes. It was then called back into open court.

The trial judge then stated to the jury that he desired to know how the members stood numerically, but did not wish them to state what attitude the different groups took toward the guilt of the defendant. The foreman of the jury promptly answered, "eleven to one." Next, the court apparently assuming that the eleven were for a verdict of guilty of first degree murder without recommendation, to which the one did not agree, proceeded:

"Very well, you jurors have been deliberating for over seven hours. There was a question propounded to the Court by the members of the jury relative to the record on the questions of each individual juror as to their opinion, their ideas, their attitudes with respect to capital punishment and every juror sitting in this box without exception in-

dicated to this Court and to these lawyers that they had no objection to capital punishment in a proper case and that is the record as far as it is revealed here in Court.

"Now the court desires to give you jurors a further instruction to aid you in the further consideration of this case."

The court then proceeded to give the jury what is known in the courts and among members of the bar as the shotgun instruction, having ascertained eleven of the jurors were voting against one and having referred to the statement of the jury as to capital punishment. That statement, it would seem, would apply to the one juror who might have been voting for any degree of guilt from second degree murder to manslaughter, or who might have been voting for not guilty. And it would further seem that the instruction became a lecture to the one juror as to his duty to consider the attitude of the eleven as to first degree murder, reminding him it was his duty to decide the case if he could conscientiously do so, and to cause him to wonder if a doubt in his own mind could be reasonable when all of his fellow jurors, equally intelligent and equally honest with himself who had listened to the same evidence with the same attention were thoroughly convinced. The instruction could have had no influence whatever on the eleven jurors. As far as they were concerned they had decided the

case; they were in the majority and there was nothing in that instruction for them to further consider.

Following this instruction appears this:

"I again would like to remind you jurors of the oath that you took when you were sworn in to try this case and of the oath that you took prior to being qualified as jurors to answer truly and fairly all questions propounded to you by the Court or by the lawyers in this case and one of those questions was whether or not you believed in capital punishment in a proper case by both sides which was adequately explored by both the prosecution and the defense without exception. All you jurors, all twelve of you jurors answered that question in the affirmative that you believed in capital punishment without exception.

"Based on the supplemental instruction that has been given you, based on the re-answering the previous question propounded by members of the jury relative to the record on the questions propounded to the jury on their attitudes with respect to capital punishment, the Court now directs that you jurors retire and continue your deliberations."

At oral argument before this Court there was produced with a request that it be made a part of the record proper on appeal the following note:

"The jury cannot reach a verdict as we have one juror who maintains that he does not believe in capital punishment.

"Members of the Jury
Filed in my office
May 29, 1956
Salomon Vallejos
Clerk of the District Court."

This request came from the appellee after it had been referred to by the appellant. At the trial of the case it appears that neither party knew anything about the note. It was later found in the trial court's file in the clerk's office.

■ This Court is firmly committed to the general rule with respect to such communication made to the court whether by some individual member of the jury or the jury as a whole. In State v. Hunt, 26 N.M. 160, 189 P. 1111, 1115, the Court said:

"Whatever fact the juror desires to communicate to the trial court relative to the case then on trial should be made from the jury box in open court and in the presence of the parties and likewise the answer of the judge thereto."

See, also, State v. Beal, 48 N.M. 84, 146 P.2d 175; 54 Am.Jur., §§ 904, 950, 952, pp. 649–651, 671–672.

A look at the record of the voir dire examination of the jury will show that in

addition to the jurors having answered as they were reminded by the court, each of them also answered that in a proper case he would make a recommendation of leniency.

In repeatedly reminding the jury of its answers to the question that it believed in capital punishment in a proper case, the court omitted any mention whatever that the jury had stated anything about leniency.

We must hold that any one of these statements made by the court, which could have affected one juror only, was error. All other jurors had already agreed to the return of a first degree verdict.

We have pointed out above that the efforts of the court in his repeated reminders on what the voir dire showed was apparently an effort to drive one juror in acquiescing in the verdict of his fellow jurors—first degree murder.

As to what verdict should be returned by the jury, the trial court cannot be officially concerned. Where the judge and jury have heard the evidence and the judge has instructed the jury, nothing is left to be done except for the jury to consider the fact established by the evidence and return a verdict. They should be as free, and each juror should be as free, to determine the facts as the court in the trial was free to determine the law and announce it in his instructions.

In 53 Am.Jur. 671, § 951, "Trial," appears the following:

"* * * The verdict of the jury should be free and untrammeled, and cannot now stand where the jury have been subjected to any statements or directions naturally operating to coerce or threaten them to reach an agreement, whether the coercive acts or statements originate with the judge, * * *. While he may advise and persuade, he may not say or do anything which will drive the jury to a decision. There should be nothing in intercourse between the trial judge and jury having the least appearance of duress or coercion."

It is further stated at page 677, § 961:

"Comments or remarks of the trial judge reflecting upon the honesty, integrity, or intelligence of the jurors in case of failure to agree are not permissible. Accordingly, it is improper for a judge to tell the jurors that some of them are forgetting their oaths, to suggest as a reason for agreeing that failure to agree is 'almost to confess incompetency,' * * *."

See, also, State v. Ochoa, 41 N.M. 589, 12 P.2d 609; Hyde v. U. S., 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; Kelsey v. U. S., 5 Cir., 47 F.2d 453, 85 A.L.R. 1418; People v. McNaspie, 261 App.Div. 657, 27 N.Y.S.2d 906, 19 A.L.R. 1258.

We are compelled to hold that the repeated reminders of the trial court to the

jury of statements by them on voir dire are coercive and that the trial court was in error in making them.

The second proposition is founded upon the allegation of the appellant that the question was put by the jury to the court as to what was said by the jurors on voir dire as to capital punishment. Appellant claims that the court responded by telling the jury only a part of what was said by the jurors; that he omitted telling the jury that their answer on voir dire was that they would have voted for exercise of leniency in case a first degree verdict should be rendered if they believe that should be done.

We agree with the appellant; and think that which is said as Proposition I is sufficient to dispose of appellant's Proposition II.

Appellant's Point III is that the trial court erred in permitting William C. Bowman, who testified for the State, to answer questions propounded to him by statements, each of which should have been statements of the belief of the witness, statements of opinion of the witness, and not statements of fact as he says was done.

In each of the statements of the witness it will be found that the witness said, "I concluded * * *" followed by the appropriate statement. To use the word "concluded," indicates that the witness is not doing more than stating his opinion. So we do not find error in Point III.

Appellant's fourth Point is that the defendant was erroneously tried upon an information filed before the defendant had been given a preliminary hearing. Appellant's contention is that the information upon which appellant was tried in district court can not be the basis of a trial after he had a preliminary hearing.

This Court disposed of the same contention in the case of State v. Bailey, 62 N.M. 111, 305 P.2d 725, by saying that the court did not err by putting the appellant to trial on an information filed before the preliminary examination.

Appellant's Point V is that the court committed error in admitting State's exhibits designated by letters and figures as U1, V, X, Y, Y1, X1, U2. These exhibits consisted of some of the clothing and personal belongings of the deceased as identified by Mrs. Rainey, widow of the deceased. They were found in the abandoned car a long distance from any highway in the state of Utah. Defendant admitted taking the automobile after he had once shot Mr. Rainey, the deceased. There was nothing about any of the exhibits which would, or could, inflame or prejudice the jury.

If there is a reasonable connection with the deceased or the defendant in a murder prosecution, demonstrative evidence, either pictures or other evidence, such as clothing in this case, is admissible if tending to prove any element of the

crime. People v. Pollum, 97 Cal.App.2d 173, 217 P.2d 463; Smalley v. People, 116 Colo. 598, 183 P.2d 558; Commonwealth v. Taylor, 327 Mass. 641, 100 N.E.2d 22; Linger v. State, 199 Md. 503, 86 A.2d 888. Under the circumstances the court did not err in admitting the exhibits in question.

■ Appellant contends that the confession made by him should not have been admitted in evidence for the reason that it was induced by a promise of leniency.

Both parties essentially agree that a confession induced by a promise of leniency from a person in authority is not admissible in evidence. Further, they agree that a person holding the position held by Chief Roach, Chief of New Mexico State Police, was a person in authority when considering his admitted statement of which complaint is made. State v. Dena, 28 N.M. 479, 214 P. 583; State v. Lindemuth, 56 N.M. 257, 243 P.2d 325.

It now becomes necessary to determine whether the confession first made to Chief Roach and later to other persons was due to the belief on the part of the defendant that Chief Roach was right in his statement that the law in New Mexico would prevent his suffering death as a result of a conviction.

When the defendant and Chief Roach agreed that one who entered a plea of guilty to murder would not suffer death, one or two other persons were present. The district attorney was not there nor was the sheriff. But Chief Roach was present when the defendant orally and by typing gave his confession to the district attorney and others. These facts lead us to conclude that the statements made by Chief Roach amounted to a direct inducement of leniency if the appellant confessed. The undisputed testimony of Chief Roach confirmed, or affirmed, the inquiry of the appellant that if he "copped a plea he wouldn't fry." Chief Roach affirmed that it was the law of New Mexico that if you "copped a plea you won't fry."

It is argued by the State that what transpired between Chief Roach and the appellant constituted in no way a promise of leniency. Generally, the cases in this jurisdiction as well as those of others deal with promises. State v. Foster, supra; State v. Dena, supra; State v. Lindemuth, supra; State v. Lord, 42 N.M. 638, 84 P.2d 80.

The statement goes further, however, than a mere promise. Here the accused was assured that he was correct in his belief that the law in New Mexico provided that when one confessed to murder he could not be executed for that crime. This goes substantially further than a promise of leniency. It is an assurance that the death penalty could not be assessed under the law. This misconception of the prevailing law was not merely alluded to or hinted at; the accused was plainly told that such was the law.

436

While an act done under a misconception of the law applicable to that act is generally done at the risk of the one acting, when a confession to murder is made because the chief police officer of the state confirms as the statutory law a misconception stated by the confessor to the effect that capital punishment could follow, that statement of confession is not made at the confessor's risk.

In State v. Lindemuth, supra, the court stated, 56 N.Mex. at pages 266, 267, 243 P.2d at page 331:

"Of course, a confession induced by a promise to an accused of a lighter sentence from a person in authority is inadmissible because involuntary. The question whether it was so induced where there is no direct promise and one must be inferred, if at all, from conflicting evidence, is still one for the jury."

When there is such an inducement to a confession, as in this case, by assurance that a confession of first degree murder could not result in a sentence of death, the confession should not be, and is not, admissible in evidence. Since the confession in this case is clearly of that kind, it was error to allow it in evidence.

Other propositions are stated by the appellant but in view of what has been said above it is unnecessary to pass on the other claimed errors.

Because of the errors above pointed out, the judgment of the lower court should be reversed and the cause should be remanded for a new trial.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SADLER, J., not participating.