455 P.2d 189

**Ray E. PIRCH, Plaintiff-Appellee,**

v.

**FIRESTONE TIRE & RUBBER CO., a corporation, Defendant-Appellant.**

**No. 250.**

Court of Appeals of New Mexico.

May 9, 1969.

Certiorari Denied June 4, 1969.

324

John P. Burton, Robert M. St. John, Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for defendant-appellant.

Richard E. Ransom, William G. Gilstrap, Smith, Ransom & Deaton, Albuquerque, for plaintiff-appellee.

## OPINION

SPIESS, Chief Judge.

This is a products liability case involving a truck rim manufactured and sold by the appellant, Firestone Tire & Rubber Company. The plaintiff (appellee) sought recovery as against Firestone on the ground that certain personal injuries sustained by him were proximately caused (1) by Firestone's manufacture and sale of a product (truck rim) of an unreasonably dangerous design, or (2) the negligent failure of Firestone to adequately warn of dangers incident to the foreseeable method of using the product to those foreseeably using it.

Appeal is from the judgment upon the verdict awarding damages to plaintiff (appellee). Many of the facts involved will be omitted for the reason that they have no relevancy to the issue upon which we determine this appeal.

The plaintiff was employed as a truck driver and while in the performance of his duties he had occasion to drive a truck to a service station for the purpose of inflating a tire. As he was inflating the tire the steel rim on the wheel, being the rim man-

ufactured and sold by Firestone, flew away from the truck and struck plaintiff, causing serious and permanent injury to his head, eye and leg.

The issue which we consider determinative arises from certain statements made by the court to the jury after submission of the case to it for decision.

It appears from the record that the case was submitted to the jury at 4:25 in the afternoon of the fourth day of trial. Deliberations were interrupted at 6:30 p.m. for the evening meal and at 7:50 p.m. the jury continued its deliberations. At 10:25 p.m. the bailiff reported to the court and assembled counsel that he was informed by the foreman of the jury that it was hopelessly deadlocked. The court and counsel then discussed the propriety of giving the so-called "Allen" instruction. It was concluded that no such instruction would be given.

The jury was then brought back to the jury box and the court, in the presence of all counsel, addressing the foreman of the jury stated: "It has been reported to the court that you have been unable to reach a verdict in the case." The foreman nodded assent and the court continued: "Without disclosing whether the votes are for or against any particular side will you please tell me what the numerical count on the voting is at the present time." The foreman replied: "It is five to seven and it has been that for the last two hours." The court then said: "You do realize that this is an important case and it has been in trial for four days and entails great expense having the jurors, the judge, the attorneys and experts and the witnesses. Have you considered this fact in your deliberations?" The foreman answered yes.

The court further addressing the foreman said: "Do you believe if you deliberated further in this case you could reach a decision?" The foreman answered: "Do you mean me personally or all of us?" The court said: "All of you." The foreman then replied, "I believe we could reach a decision in two or three hours." The

court then addressed the panel as a whole and said: "You have heard the statement just made by the foreman that he believes a decision could be reached by further deliberation in two or three hours. May I see the hands of those who believe that statement to be true." Eleven jurors raised their hands. The time was then approximately 10:35 p.m. The court made the following further statement: "I will give you another hour and a half. You may continue your deliberations. If you have not reached a verdict by that time I will declare a mistrial." The jury then retired for further deliberations. At this time Defendant Firestone moved for a mistrial based upon the comments of the court to the jury. This motion was not acted upon by the court.

At about 11:50 p.m., the court, intending to declare a mistrial, summoned counsel into the courtroom but before the jurors were directed to return to the jury box, the foreman indicated that the jury was ready to report. It was then 11:53 p.m. The foreman then read the verdict reached by the jury. A poll of the jurors disclosed that the vote was ten in favor of the verdict and two against it. The jury was then discharged. Thereafter Firestone renewed its motion for a new trial. The motion was then expressly denied and such denial is assigned as error.

It is urged that the trial court's inquiry and statements to the jury when disagreement was reported were coercive in effect and improperly induced the verdict. Firestone's objections relate specifically to (1) the inquiry by the court as to how the jury was numerically divided; (2) admonishing the jury as to the importance of the case, the length of time of trial and the expense incident to trial without cautioning them not to surrender their honest convictions for the mere purpose of arriving at a verdict; and (3) the imposition of a time limit on further deliberations coupled with the threat to declare a mistrial if a verdict was not reached within the time so limited.

Firestone argues that each action standing alone constitutes reversible error. In the alternative it contends that the cumulative effect of the several actions resulted in coercion, and a new trial should have been granted.

We agree with the latter contention.

■ It is, of course, well settled in circumstances where a jury has announced to the court its inability to agree upon a verdict that it is within the discretion of the trial court to urge on the jurors an earnest effort to agree. In so doing, however, it is generally held that the court should state in clear language that nothing it has said means or is intended to mean that any juror should surrender his own free will and judgment. We favor the use in such circumstances of N.M.U.J.I. 16.2.

A case, although not strictly in point, but enlightening in this connection, is Middle States Utilities Co. v. Incorporated Telephone Company, 222 Iowa 1275, 271 N.W. 180, 109 A.L.R. 66 (1937), involving a verdict urging instruction to a deadlocked jury.

"The susceptibility of jurors to the influence of the presiding judge should prompt the court to emphasize the thought that the court is not endeavoring to inject his own ideas into the minds of the jurors in reference to the verdict which they should find, and should likewise emphasize that in nothing that is said in the instruction does the court intend or mean that any juror should surrender his own free will and judgment. These ideas should be couched in language that would be readily understood by the ordinary lay juror."

Different conclusions have been reached as to the propriety and effect of an inquiry by the Judge as to the numerical division of the jury. Such inquiry alone has been treated as reversible error by a number of authorities. Others take the view that the inquiry while improper is not alone prejudicial error. There are other authorities holding that the inquiry is proper.

A detail of such division of authorities is found in Annot., 85 A.L.R. 1420, 1450 (1933), and in Orr v. State, 40 Ala.App. 45, 111 So.2d 627 (1958). We will not burden this opinion with the repetition of authorities available in the annotation and Orr v. State, supra. Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L. Ed. 345 (1926), contains the following statement in reference to this type of inquiry:

"We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned."

The authorities to which we have referred amply demonstrate the different views which have been expressed relating to this contention.

■ Remarks of a trial judge relating to the importance of the case, the length of time it had been in trial, and the expense involved made to a deadlocked jury are, in our opinion, verdict-urging and suggest, at least by implication, that certain of the jurors abandon their views and concur with others to effect agreement. The propriety of any such suggestion is questionable and if made should be accompanied by the admonition that no juror should surrender his conscientious convictions for the sake

of agreement. See annotations 109 A.L.R. 72, 73 and 19 A.L.R.2d 1257, 1258 (1951).

An appropriate statement is contained in In Re Stern, 11 N.J. 584, 95 A.2d 593 (1953).

"It was within the discretionary province of the judge to allude to all the factors making agreement desirable, including the expense attendant upon a retrial; but such an instruction is fundamentally deficient unless the jurors be told that none should surrender his conscientious scruples or personal convictions to that end. Vide Railway Express Agency v. Mackay, 181 F.2d 257, 19 A.L.R.2d 1248 (C.C.A.8, 1950); In re Cocklin's Estate, 232 Iowa 266, 5 N.W.2d 577 (Sup.Ct.1942); Gaddy v. Harmon, 191 Ga. 563, 13 S.E.2d 357 (Sup.Ct.1941); Decker v. Schumacker, 312 Mich. 6, 19 N.W.2d 466 (Sup.Ct. 1945); Acunto v. Equitable Life Assurance Society, 270 App.Div. 386, 60 N.Y.S. 2d 101 (1946); Lennox v. White, 133 W.Va. 1, 54 S.E.2d 8 (Sup.Ct.1949). See, also, Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). Undue stress was laid upon the economic element and the importance of a verdict; agreement to avoid the expense of a retrial of the cause was the dominant consideration, and the result betokens its coercive tendency and effect."

There is likewise substantial authority, including the cases hereinafter mentioned, which tend to reach the conclusion that a reference to expense of litigation and related matters is not improper although such statement is not accompanied by an admonition to the effect that individual convictions should not be abandoned for the sake of agreement. Clos v. Chapman, Ohio App., 34 N.E.2d 811, 33 Ohio L.Abst. 307 (1940); People v. Achal, 125 Cal.App. 652, 14 P.2d 773 (1932); Roper v. Holbrook, 77 Ga.App. 686, 49 S.E.2d 558 (1948); In re Cocklin's Estate, 232 Iowa 266, 5 N. W.2d 577 (1942); Starac v. Corsale, 22 Ill.App.2d 142, 159 N.E.2d 384 (1959); People v. Kasem, 230 Mich. 278, 203 N.W. 135 (1925); London v. Stepp, 56 Tenn.

App. 161, 405 S.W.2d 598 (Tenn.App, 1965).

The only grounds urged by the court for resolving differences and reaching agreement were the importance of the case, the time involved, and the expense incident to the trial. To have so urged these grounds alone, to our mind, over-emphasized extraneous matters wholly unrelated to the issues and suggested agreement upon a verdict for reasons not within the evidence.

██ Imposing a time limit upon the deliberations of a jury, in our opinion, tends to coerce jurors into agreeing upon a verdict contrary to their individual convictions, in order that a verdict may be reached within the time so limited. Burroughs v. United States, 365 F.2d 431 (10th Cir.1966), is expressive of our view on this point.

"* * * in any event, it is one thing to recall the jury to beseech them to reason together, and it is quite another to entreat them to strive toward a verdict by a certain time. When these admonitions are considered in their context, they are subject to the clear inference that the judge was unduly anxious to conclude the lawsuit, and we think it entirely reasonable to infer that the jury was aware of his anxiety. This type of verdict-urging on the part of the court tends to undermine the proper function of the common law jury system as contemplated by the Seventh Amendment * * *."

The effect of imposing a time limit upon the deliberations of a jury, although involving a court officer and not the judge, is well stated in Wilkins v. Abbey, 168 Misc. 416, 5 N.Y.S.2d 826 (1938).

"The restriction of time which the officer imposed in this case was such an interference with the free and untrammeled deliberations of the jury as to amount to unlawful coercion and duress, and the natural tendency of such conduct was to compel a verdict. It denied to the jury their fundamental right to disagree. It narrowed the range of the full and complete inquiry into the evidence

which the jury was bound to make. It counseled in effect, if not in substance, a surrender of convictions and conclusions, however honestly and conscientiously held, in order to reach a verdict. It carried an intimation that it was more important that the jury reach a verdict than that they should reach a true and just verdict. It was a tacit invitation to hold lightly the oath which each juror had taken to render a true verdict according to the evidence."

The following cases indicate that reasonably limiting the time for deliberation by a jury, and so informing it, is not improper. Jacobsen v. Gamber, 249 Iowa 99, 86 N. W.2d 147 (1957); Maloney v. Tunnell, 218 F.2d 705 (3rd Cir.1955); Kimbriel Produce Co., Inc. v. Webster, 185 S.W.2d 198 (Tex.Civ.App.1944).

In determining whether a question is presented as to the coercion of the jury, we have considered the actions of the trial court in their entirety and in the context in which they arose.

We think that each action standing alone was at least improper. Substantial authority, as we have shown, supports the view that each such act when so considered is reversible error. We are compelled on this record to hold that the cumulative effect of these actions was coercive and tended to force agreement, and that this effect constitutes reversible error. We have no doubt that the effect we accord the Judge's actions was not so intended by him. The propriety of the remarks, however, must be measured by the language employed, not the motive of the Judge.

The coercive tendency of the trial court's actions is reasonably shown by the indication of eleven jurors that they were of the opinion a verdict could be reached within two or three hours, just after their foreman had announced a division of seven to five. The jury had not left the jury box between the announcement of the foreman and the indication by the eleven jurors that they felt a verdict could be reached in two or three hours. The only

intervening actions were those of the court in asking the questions and in making the observations to which reference is above made. This prompt response is a reasonable indication that the court's actions had influenced at least some of the jurors to the point where they contemplated a change of view for the sole purpose of securing a verdict.

The fact that ten jurors reach agreement within a few minutes of the time fixed by the court for further deliberation indicates, at least inferentially, that the verdict was not uninfluenced by the actions of the trial court.

We have considered Garcia v. Sanchez, 68 N.M. 394, 362 P.2d 779 (1961); State v. Hunt, 26 N.M. 160, 189 P. 1111 (1920), and Territory v. McGinnis, 10 N.M. 269, 61 P. 208 (1900), which have been called to our attention by plaintiff. These cases do not involve the cumulative effect of a number of challenged actions as is presented here.

For the reasons indicated the motion for new trial should have been granted. The case is accordingly reversed.

It is so ordered

OMAN and HENDLEY, JJ., concur.