547 P.2d 574
**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Richard F. ARAGON, Jr., Defendant-Appellant.**

**No. 2175.**

Court of Appeals of New Mexico.

Feb. 3, 1976.

Certiorari Denied March 9, 1976.

Clyde E. Sullivan, Jr., Albuquerque, N. M., for defendant-appellant.

Toney Anaya, Atty. Gen., F. Scott MacGillivray, Asst. Atty. Gen., Santa Fe, N.M., for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Convicted of trafficking in heroin, defendant appeals. Section 54–11–20, N.M. S.A.1953 (Repl.Vol. 8, pt. 2, Supp.1975). There was substantial evidence to support the conviction. Because we remand for a new trial, we discuss four of the issues: (1) sufficiency of search warrant description; (2) scope of the search; (3) double jeopardy, and (4) coercive conduct by the trial court.

*Sufficiency of the Search Warrant*

■ Police officers searched defendant's premises pursuant to a search warrant. Defendant moved to suppress certain evidence on the basis that the warrant did not sufficiently describe the premises to be searched. At the evidentiary hearing it was shown that the warrant contained two errors. The color of the residence was wrong; the street number of the residence was wrong. Because of these errors defendant claims the trial court erred in refusing to hold the warrant invalid and in failing to suppress the evidence.

*State v. Sero,* 82 N.M. 17, 474 P.2d 503 (Ct.App.1970) states that "a description is sufficient if the officer can, with reasonable effort, ascertain and identify the place intended to be searched. . . . The description, however, must be such that the officer is enabled to locate the place to be searched with certainty. . . . The description ' * * * should identify the premises in such manner as to leave the officer no doubt and no discretion as to the premises to be searched. * * *' "

Apart from the two errors, the warrant described the residence as having a green pitched roof, located on the west side of Perry Road, facing east and the fourth residence north of Blake Road on the west side of Perry Road. "Located directly behind this residence is a chicken coupe [sic] type structure constructed of unpainted wood and chicken wire which contains numerous pigeons." The warrant states the residence was the only one in the immediate area which has a chicken coop containing pigeons behind it and that the chicken coop structure was plainly visible from Perry Road.

The requirements of *Sero,* supra, were met.

*Scope of the Search*

The warrant authorized a search of defendant and the residence. "Also to be

searched is the curtilage area around the above described residence". Generally speaking, "curtilage" is the enclosed space of grounds and buildings immediately surrounding a dwelling house. Black's Law Dictionary (4th Ed., 1951).

The curtilage in this case was fenced. The heroin was not found within the curtilage. The heroin was found in a tin can which was bent closed, lying on top of some weeds, "right up against the fence," but on the outside of the fence. The heroin was physically located on property upon which there was an unoccupied house described as abandoned.

Defendant contends the heroin should have been suppressed because "during the execution of the warrant the search was extended beyond the scope of the permissible boundaries as deliniated [sic] by the language of the warrant". Defendant contends that seizure of heroin found beyond the curtilage was unlawful.

■ The area outside the fence was not part of the curtilage in this case. See *Hunsucker v. State,* 475 P.2d 618 (Okl.Cr. 1970). Thus, we agree with defendant that the heroin was found and seized outside the curtilage, and that the warrant did not authorize a search outside the curtilage. This, however, does not make seizure of the heroin unlawful.

■ During the course of a lawful search within the curtilage, an officer saw the tin can outside the fence. The can was viewed from a place the officer had a right to be under the warrant. See *State v. Miller,* 80 N.M. 227, 453 P.2d 590 (Ct. App.1969). The can was not discovered as a result of an illegal search.

■ The constitutional prohibition is directed to unreasonable searches and seizures so that people may be secure in their "persons, houses, papers and effects". U. S.Const., Amend. IV; Compare N.M.Const., Art. II, § 10. The constitutional provision does not apply to items viewed in an open field. *Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898

(1924); *People v. Reed,* 210 Cal.App.2d 80, 26 Cal.Rptr. 428 (1962). Even if the location of the heroin could not be considered an "open" field because of the weeds, nevertheless the heroin was on unoccupied property. Defendant had no reasonable expectation of privacy as to this location. The constitutional prohibition does not apply. *Patler v. Slayton,* 503 F.2d 472 (4th Cir. 1974); *United States v. Brown,* 473 F.2d 952 (5th Cir. 1973); *Casey v. State,* 87 Nev. 413, 488 P.2d 546 (1971).

■ Even if the constitutional prohibition should apply, under the circumstances of this case, it was not unreasonable to seize the tin can found up against, but outside, the fence and to open the can to examine its contents. Surveillance by officers prior to issuance of the search warrant gave the officers probable cause to believe that heroin was hidden outside the residence. There is evidence that there was a path within the curtilage to the fenced area where the heroin was found.

*Double Jeopardy*

Defendant was convicted at a second trial; his first trial ended in a mistrial. Defendant contends his second trial subjected him to double jeopardy because there was no "manifest necessity" for the mistrial.

During the first trial the State sought to introduce an oral statement which defendant made shortly after the heroin was found. Defendant objected on the ground there was no showing that defendant had been advised of his rights prior to making the statement. This objection was framed as a "constitutional ground". The trial court conducted an evidentiary hearing outside the hearing of the jury and suppressed defendant's statement. After suppressing the statement, the trial court granted the State's motion for a mistrial.

The mistrial order states:

"This Court finds that a mistrial is necessitated by the failure of Defendant to properly and timely file motion to suppress oral statements prior to commence-

ment of trial, and raising of such motion for the first time during trial (contrary to local court rule) constituted prejudice to the State, and created a manifest necessity for mistrial upon the State's motion for same."

In seeking a mistrial, the State contended the defense had deliberately failed to timely move to suppress the oral statement prior to trial in order to cut off the State's right to appeal an adverse ruling. Defendant points out that the record does not show the State attempted to take an appeal (see § 21-10-2.1(B)(2), N.M.S.A.1953 (Repl.Vol. 4, Supp.1975)), and therefore there was no manifest necessity for the mistrial.

In addition, defendant asserts there is no showing that the State complied with defendant's request for discovery and, therefore, the State, rather than defendant, is at fault for the late motion. Because of this asserted fault by the State, defendant argues that there could be no manifest necessity for a mistrial.

■ The record shows that defendant did request discovery pursuant to Rule of Criminal Procedure 27. The record does not show that any procedures were held in connection with the asserted failure of the State to make discovery. See Rule of Criminal Procedure 27(d). Nor, during the hearing leading to the mistrial order, was any mention made of the asserted failure of the State to comply with any discovery rule. The "discovery" contention is spurious; it will not be considered further.

■ The record supports defendant's claim that the State did not attempt to appeal the ruling excluding defendant's oral statement. Compare, *United States v. Moon*, 491 F.2d 1047 (5th Cir. 1974). We decline to hold there was a manifest necessity for the mistrial based on a right to appeal when no appeal was attempted. This, however, does not dispose of the double jeopardy claim.

■ In determining whether a mistrial should be declared, the trial court must consider whether the ends of public justice would be defeated by carrying the first trial to a final verdict. This consideration for the ends of public justice is a concept separate from manifest necessity. *State v. De Baca*, 88 N.M. 454, 541 P.2d 634 (Ct. App.1975).

*State v. Helker*, 88 N.M. 650, 545 P.2d 1028 (Ct.App.) decided December 2, 1975, held that the trial court could properly refuse to hear a motion to suppress that was untimely under Rule of Criminal Procedure 18(c). *Helker*, supra, had not been decided when defendant moved to suppress during the trial. The trial court felt it was required, constitutionally, to conduct an evidentiary hearing even though the motion was untimely. Yet, in so proceeding, the trial court ruled that the State was prejudiced by the untimeliness of the motion. The State was in fact prejudiced, because as *Helker*, supra, points out, the purpose of the rule providing for a timely motion to suppress is to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt.

*United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) points out that in considering whether a mistrial was proper "unquestionably an important factor to be considered is the need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process."

The failure of defendant to file a timely motion to suppress resulted in prejudice to the State. In such circumstances, it would be contrary to the ends of public justice to carry the first trial to a final verdict. The trial court did not abuse its discretion in declaring a mistrial; there was no double jeopardy. *United States v. Jorn*, supra; *State v. De Baca*, supra.

*Coercive Conduct by the Trial Court*

The jury retired to consider its verdict at 3:10 p. m. At 6:30 p. m. the jury was returned to the courtroom. The trial court inquired how they stood numerically. The foreman answered: "Seven, four, one."

The trial court sent the jury to dinner with instructions to resume deliberations upon completing the meal. At midnight the court decided to give an additional instruction over defendant's objection. The jury was returned to the courtroom and asked how it stood numerically. The answer: "Eleven to one." The additional instruction, among other things stated:

> ". . . and if the larger number of your panel are for conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one that makes no impression on the minds of so many men, equally honest, equally intelligent, with himself, who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath."

The trial court told the jury to pay "very close attention" to the instruction and stated that the instruction was written "so that you may have it with you, and use it in your further deliberations." Thereafter, sometime after midnight the jury resumed its deliberations. At 12:25 a. m. the jury returned a guilty verdict.

■ The additional instruction, known as the shotgun, was criticized by this Court in *State v. Minns,* 80 N.M. 269, 454 P.2d 355 (Ct.App.1969). However, the Supreme Court continued its approval of the shotgun in *State v. Cranford,* 83 N.M. 294, 491 P.2d 511 (1971), cert. denied 409 U.S. 854, 93 S.Ct. 190, 34 L.Ed.2d 98 (1972). Accordingly, we do not consider the additional instruction, standing alone, to be error. We consider the instruction in relation to the court's inquiry as to the numerical division of the jurors.

In *State v. Nelson,* 63 N.M. 428, 321 P. 2d 202 (1958) defendant was convicted of murder in the first degree. During selection of the jury, each juror answered that in a proper case he would not be opposed to capital punishment. The jury deliberated at length before returning a guilty verdict. During their deliberations the jury

was returned to the courtroom. The trial court inquired as to how the jurors stood numerically and was informed that the division was eleven to one. The trial court reminded the jurors of their answers on voir dire concerning capital punishment and then gave the shotgun instruction. *Nelson,* supra, states: ". . . the instruction became a lecture to the one juror as to his duty to consider the attitude of the eleven as to first degree murder . . . .. The instruction could have had no influence whatever on the eleven jurors."

*Nelson,* supra, holds that repeated reminders of the trial court to the jury of statements made by them on voir dire was coercive and reversible error. However, the opinion also states: ". . . any one of these statements made by the court, which could have affected one juror only, was error."

*Pirch v. Firestone Tire & Rubber Co.,* 80 N.M. 323, 455 P.2d 189 (Ct.App.1969) used the same decisional method as *Nelson,* supra. In *Pirch* the trial court (1) inquired as to how the jurors were numerically divided, (2) gave an additional instruction without cautioning jurors not to surrender their honest convictions in order to arrive at a verdict, and (3) imposed a time limit on further deliberations with the threat of a mistrial if a verdict was not reached within that time limit. Reversal was on the basis that the cumulative effect of the trial court's actions resulted in coercion.

■ The jury had been deliberating from 3:10 p. m. until midnight, with a break for dinner. The trial court inquired and was informed that the numerical division was eleven to one. It then gave the shotgun instruction over defendant's objection. This instruction was a lecture to one juror. *State v. Nelson,* supra. Within twenty-five minutes of this lecture, a guilty verdict was returned. On the authority of *Nelson,* supra, and *Pirch,* supra, we hold that the inquiry as to numerical division followed by the shotgun instruc-

tion was coercive conduct requiring reversal.

Although our decision in this case is based on a combination of circumstances, we point out that the United States Supreme Court has held that inquiry as to the numerical division of a jury is error in itself.

In 1905, *Burton v. United States,* 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482, condemned the practice of inquiring as to the numerical division of jurors. The opinion states that such a practice ought not to grow up because it was not material for the court to know the numerical division. " . . . [W]e do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge."

There was disagreement as to whether noncompliance with the comment in *Burton,* supra, amounted to reversible error. This disagreement was resolved in 1926 in *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345. The trial court inquired as to numerical division and was informed that the jurors stood nine to three. *Brasfield,* states:

"We deem it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for reversal."

\* \* \* \* \* \*

"The failure of petitioners' counsel to particularize an exception to the court's inquiry does not preclude this court from correcting the error. . . . This is especially the case where the error, as here, affects the proper relations of the court to the jury, and cannot be effec-

tively remedied by modification of the judge's charge after the harm has been done."

Compare, *Amos v. United States,* 496 F.2d 1269 (8th Cir. 1974).

■ Because the error goes to a "fair and impartial" trial, the error violates due process. Accordingly, *Brasfield v. United States,* supra, applies to New Mexico courts.

■ Although *Brasfield,* supra, was decided fifty years ago, it appears that it has been little noted by either courts or counsel in New Mexico. See *State v. Romero,* 86 N.M. 674, 526 P.2d 816 (Ct.App.1974). Accordingly, we give prospective application to the rule that inquiry into the numerical division of jurors is reversible error. *State v. Jones,* 44 N.M. 623, 107 P.2d 324 (1940); see *State ex rel. Apodaca v. Fiorina,* 83 N.M. 663, 495 P.2d 1379 (1972), cert. denied 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974). The rule will be applied in all cases where an inquiry into the numerical division occurs after the date of this decision. Compare *Vallo v. State Board of Health and Social Services,* 84 N.M. 220, 501 P.2d 664 (Ct.App.1972). Inquiries into numerical division occurring prior to the date of this decision will be reviewed under the approach taken in *State v. Nelson,* supra, and *Pirch v. Firestone Tire & Rubber Co.,* supra.

Oral argument is unnecessary. Because of coercive conduct by the trial court, the judgment and sentence are reversed. The case is remanded for a new trial.

IT IS SO ORDERED.

HENDLEY and SUTIN, JJ., concur.