506 P.2d 804

**STATE of New Mexico, Plaintiff-Appellee,**
**v.**
**Cloteal COULTER, Defendant-Appellant.**
**No. 964.**

Court of Appeals of New Mexico.

Feb. 2, 1973.

**648**

James J. Weldon, Alamogordo, for defendant-appellant.

David L. Norvell, Atty. Gen., James H. Russell, Jr., Asst. Atty. Gen., Sante Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Defendant was charged with first degree murder in violation of § 40A–2–1(A) (2) (3) (4), N.M.S.A.1953 (Repl.Vol. 1964). The jury convicted defendant of murder in the second degree (§ 40A–2–1(B), N.M.S.A.1953 (Repl.Vol. 1964)) and defendant appeals asserting five points for reversal regarding: (1) a bill of particulars; (2) admission of photographs; (3) no proof of corpus delicti; (4) failure to grant motion for directed verdict at close of state's case and after all evidence was received; and, (5) refusal to give requested instructions.

Viewing the record in the light most favorable to support the verdict (State v. Valles, 84 N.M. 1, 498 P.2d 693 (Ct.App. 1972)) the record discloses the following.

During the early morning hours of November 25, 1971, an ambulance was called to the residence of defendant. Defendant, with her four-year-old child in her arms, met the ambulance. She told the ambulance attendants the child was not breathing. The child was wearing pajamas and was bandaged on the face and one arm. The child and defendant were taken to the hospital where a nurse attempted to resuscitate the child. A doctor had been called and upon his arrival the pajamas were removed and several bandages were found on the child's body including a bandage which went around the chest. When that bandage was cut it was described as popping because it was so tightly wrapped. There were bruises and burns over the entire body and head. Defendant had told the ambulance attendants that the child was being treated for burns previously received by pulling a pan of hot water off of the stove onto himself. The sheriff testified that defendant told him that the child was scalded with water when the child had startled her while she was carrying a pan of hot water, causing her to spill the water on the child.

The father of the child, who was not the defendant's husband, testified that the child was a "normal kid." After the boy's death he told the sheriff that on occasion he had had to stop defendant from beating the child; that defendant had a high temper.

A nurse on duty described the bruises as "imprints resembling a belt buckle, multiple imprints on the child's back"; that the bruises were in a "generalized area, too many for a fall or two or three"; that the bruises were not consistent with a spanking.

A medical doctor, Dr. LaBarre, stipulated to as an expert by defendant, and who was also the Otero County Coroner did give an opinion as to the cause of death.

Dr. LaBarre saw the child approximately four hours after death. He found "contusions to the head, abrasions over the entire body, and some excoriation of the skin [losing of the outer layers of skin] on the lower extremities." Also, the cuts and bruises were quite recent (within two or three days). The coroner established the cause of death as a "trauma, generalized, associated with malnutrition." He found no gross evidence of burns.

A pathologist, Dr. Pond, after examination of the body, stated in his report:

"REVIEW OF THIS AUTOPSY INDICATES NO OBVIOUS CAUSE OF

DEATH. THE PATIENT PRESENTS WITH EXTENSIVE SKIN DAMAGE AND EMACIATION, BUT A SPECIFIC CAUSE OF DEATH RELATED TO THIS IS ABSENT FROM A MORPHOLOGIC STANDPOINT. IN THE ABSENCE OF OTHER CHANGES AND IN THE ABSENCE OF OTHER CLINICAL INFORMATION WHICH COULD BE OF HELP, ONE COULD DRAW THE CONCLUSION THAT DEATH WAS CAUSED BY THE SKIN DAMAGE AND EMACIATION ALONE, BUT THIS IS A CONCLUSION BASED ON ELIMINATION OF OTHER CAUSES ONLY."

The autopsy showed the death was not due to "natural" causes.

### Bill of Particulars

Prior to trial, defendant filed a motion for a bill of particulars (§ 41–6–8, N.M.S.A.1953 (Repl.Vol. 1964)) requesting particulars as to the means, manner, or method by which the act was done. At the hearing on the motion the defendant's counsel stated he wanted to know what acts the state would rely on to prove first degree murder, that is, what acts of the defendant constituted torture; what acts of defendant constituted commission of or attempt to commit aggravated battery; what acts of defendant were greatly dangerous to life. The prosecutor stated that he did not know what specific instrument was used to inflict the injuries and that he was going to trial on circumstantial evidence; that he had opened his files to defense counsel and that defense counsel had seen everything the state had. Defendant's counsel stated he wanted the state to specify what particular acts were being relied on and that he did not want to have to go through the files furnished by the state and guess what was going to be used by the state. The trial court ruled that where the state had made available all the information in its files the purpose of a bill of particulars had been fulfilled.

Defendant does not claim any new evidence was used at trial aside from what was furnished before trial. Defendant in relying on State v. Mosley, 75 N.M. 348, 404 P.2d 304 (1965) claims that since she was not furnished with a "description and identification details of the means or weapons used" she was prejudiced in the preparation of her defense. We disagree.

The object of a bill of particulars in criminal cases is to enable the defendant to properly prepare his defense. We fail to see how defendant was prejudiced. Defendant had all the information the state had. There was nothing more to be furnished.

### Photographs

Defendant contends the admission into evidence of the photographs of the body of the defendant's son were ". . . inflammatory and prejudicial and served no purpose other than to prejudice the Defendant in the minds of the jurors." We disagree.

The photographs were relevant to the issues of the case. They were used by the doctors to describe the injuries and condition of the body. Photographs are properly admissible for the purpose of clarifying and illustrating the testimony of witnesses and to corroborate other evidence. State v. Sedillo, 76 N.M. 273, 414 P.2d 500 (1966); State v. Webb, 81 N.M. 508, 469 P.2d 153 (Ct.App.1970).

Defendant also contends that at the time the photographs were admitted into evidence there was no evidence that death was criminally caused nor was there evidence of a causal connection between any act of defendant and her son's death.

Defendant does not refer us to any authority for the proposition that such evidence must be admitted before photographs can be admitted. The admission of photographs into evidence rests within the sound discretion of the trial court and absent a showing of an abuse the trial court's discretion will not be disturbed. State v.

Webb, supra. Defendant has failed to show such an abuse here.

### Corpus Delicti

■ To prove the corpus delicti in a homicide case the state must show that the person whose death is alleged is in fact dead and that his death was criminally caused. State v. Casaus, 73 N.M. 152, 386 P.2d 246 (1963); State v. Vallo, 81 N.M. 148, 464 P.2d 567 (Ct.App.1970).

■ Defendant does not dispute the fact of the death of her son. Rather, defendant alleges that there was no proof that the death of her son was criminally caused. In this defendant relies on the pathologist's testimony and the statement in his report that he did not know specifically what had caused the child's death. However, as we have heretofore stated, the coroner, who was stipulated to as an expert, stated that death was caused by "trauma, generalized, associated with malnutrition." He stated that this determination was based on his examination of the body. Viewing the evidence in the light most favorable to support the verdict, the state made a showing that the death was criminally caused.

### Directed Verdict

Defendant's motion for a directed verdict at the end of the state's case and after all the evidence was in raises three basic issues—lack of evidence as to criminal causation; no causal connection between the death of the child and an act of defendant; and insufficient circumstantial evidence. We have already dealt with criminal causation under the corpus delicti point and will only discuss the two remaining issues raised.

■ Circumstantial evidence is sufficient to establish guilt in a prosecution for homicide. State v. Casaus, supra. Those circumstances must point unerringly to the defendant and be incompatible with and exclude every reasonable hypothesis other than guilt. State v. Page, 83 N.M. 487, 493 P.2d 972 (Ct.App.1972). The evidence previously reviewed indicates that the de-

cedent, a four-year-old child, was suffering from extensive injuries of such a nature as would cause concern, if not consternation, in any mother. Decedent lived with his mother. Both defendant and decedent were present in defendant's home prior to the time the ambulance was called. From the time at which the ambulance was called, approximately 4:00 a. m., the fact that the child was clad in pajamas and the fact that the child's extremities had already lost sufficient body heat, that they were described by the emergency room nurse as "cool", and the torso was described as only "slightly warm", it could be inferred that the child was in bed at the time the defendant discovered that he was not breathing. It is certainly not a reasonable hypothesis to infer that the defendant, who was the child's natural mother, sent him to bed while he was suffering from such extensive injuries, unless it is further inferred that she had a hand in inflicting those injuries. The only reasonable explanation of the delay in seeking medical help under the facts disclosed by this record is that the defendant herself inflicted the decedent's injuries. The evidence in this case, circumstantial though it may be, points unerringly to the defendant and is incompatible with and excludes every reasonable hypothesis other than guilt.

### Requested Instruction

Defendant's requested instruction was refused on the grounds it was argument and had already been covered by other instructions.

That instruction read:

"Before the jury can find the Defendant guilty of the charge or of any lesser charge, it must be convinced beyond any reasonable doubt that an act of the Defendant was the efficient cause of the death of the decedent, and if it has any reasonable doubt as to whether or not any act of the Defendant contributed to the death of the decedent, that doubt must be resolved in favor of the Defendant and it must find her not guilty."

Defendant contends that where the cause of death was disputed an instruction, such as her requested instruction on proximate cause, should have been given.

■ Refusal to give a requested instruction which is already sufficiently covered by other given instructions is not error. State v. Zarafonetis, 81 N.M. 674, 472 P.2d 388 (Ct.App.1970).

Here the court's other instructions already covered the issue of proximate cause. Those instructions told the jury that in order to return a verdict of guilty, it must find beyond a reasonable doubt that the boy was killed and that such killing was done by the defendant.

■ The trial court did not err in refusing to give defendant's requested instruction.

Affirmed.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.