526 P.2d 816

STATE of New Mexico, Plaintiff-
Appellee,

v.

Joey Jacob ROMERO, Defendant-Appellant.

No. 1209.

Court of Appeals of New Mexico.

Aug. 14, 1974.

Certiorari Denied Sept. 10, 1974.

Sutin, J., dissented and filed a separate opinion.

John C. Wheeler, Wheeler & Poulson, Albuquerque, for defendant-appellant.

David L. Norvell, Atty. Gen., Jay F. Rosenthal, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of second degree murder contrary to § 40A-2-1(B), N.M.S.A.1953 (Repl.Vol.1972) defendant appeals asserting three grounds for reversal which relate to: (1) defendant's statement; (2) police informant; and, (3) shotgun instruction.

*Defendant's Statement*

Detective Conley learned in an unrelated interview that the defendant was a possible suspect in a three year old homicide. Thereafter, Detectives Ness and Conley proceeded to defendant's place of employment where they interviewed him in an office on the premises.

Detective Conley stated at trial that during the interview defendant admitted shooting deceased and after the admission was given his advice of rights. Detective Ness also stated at trial that at the time they went to interview defendant he and Conley were merely investigating a crime and were in no position to accuse the defendant of a crime. Ness then stated that when *defendant made a verbal confession he immediately told defendant that ". . . we would like to advise him of his rights 'as of now due to the fact that . . . [he] admitted to a crime here,' and we did so advise him of his rights verbally."* (Emphasis added). Defendant

was then taken to police headquarters and gave a written confession after signing an Advice of Rights Form.

After the foregoing testimony defendant's attorney made the following statement to the court out of the presence of the jury.

"I'm not sure what my motion ought to be because I am caught by surprise. I wish to inform the Court that I declined to file a motion to suppress the statement in this case, because my pretrial investigation revealed that the Defendant made no incriminating statements prior to the time that his advice of rights was given. The Defendant, quite frankly, did not remember anything about the sequence of events. He was only eighteen years old at the time and didn't know the law. He didn't even know his rights, for that matter, and so I had to resort to other parties to try to find out if the procedures had been properly administered, so I spoke to Detective Ness, who I determined was in charge of the case.

"I took a tape-recorded interview of the statement, and I was advised by him that no incriminating statements were made prior to the advice of rights."

Defendant's motion for a mistrial was denied. Defendant's attorney then requested and was granted permission to play a portion of the taped interview with Detective Ness. During that interview Ness stated:

". . . we advised Mr. Romero who we were, and that we were investigating the homicide involving a Mr. Richard Cordova, explained the circumstances of how Cordova died, and asked —not really asked Romero, we just talked to him. After we explained to him why he was there and everything, he more or less—*he indicated then that he possibly knew something about it at that time. So I felt at this time that we better advise him of his rights* because rather—we weren't actually being accusatory at this time, but it was coming to the point where I thought it would be

best to advise him of his rights verbally at this time, *which we did.* And then we asked him more questions about it, and he stated that he had done it and felt— he blurted out, he said, 'I was going to tell you before', but he just never got around to it. And we advised him we would take him downtown." (Emphasis added)

Defendant's motion to suppress was denied. Defendant then made a " . . . motion for a delay in the trial of twenty-four hours while I investigate the facts in this further and present additional evidence . . . ." The court then stated:

" . . . I'm going to deny that, too. After this witness testifies, you will have until tomorrow morning when we reconvene, and you can try and locate whatever you need by then. If you can't, advise the Court and we will decide at that point whether you need additional time."

The statement was then read to the jury and admitted into evidence.

Shortly thereafter the court recessed for the evening. When it reconvened the next day defendant offered no additional evidence nor did he request any additional time.

Defendant's subsequent testimony essentially reiterated the story contained in the written statement—that he shot decedent but it was a matter of self-defense. Defendant testified he had no recollection of when the police advised him of his rights. Further, the jury was instructed on the issue of voluntariness of the confession.

We believe that the cases of State v. Barnett, 85 N.M. 301, 512 P.2d 61 (1973) and Milton v. Wainwright, Corrections Director, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972) control. They stated, under comparable circumstances, that if any error was committed it was harmless.

*Identity of Informant*

■■ Failure to disclose the identity of an informant is prejudicial error only where the individual's right to prepare his defense outweighs the public interest in protecting the flow of information to the police. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Baca, 84 N.M. 513, 505 P.2d 856 (Ct.App.1973). In this case we find no such prejudicial error.

Officer Conley testified that, to the best of his knowledge, the informant was not an eye-witness to the shooting. In *Roviaro, supra,* where the court reversed on this issue, the informant was an eye-witness. Additionally, in that case a statement by the informant was introduced into evidence and the informant purportedly admitted to a government witness that he had never seen the defendant before. In the instant case there is no indication that the informant had any relevant information other than that the defendant was a "possible suspect" in the case. Finally, in *Roviaro, supra,* the defendant did not take the stand. The informant was the only other possible witness to defendant's involvement. That is not true here where defendant testified fully. In sum the interest of the present defendant in preparing his defense does not counterbalance the state's interest in maintaining the anonymity of the informant. See State v. Baca, supra, and State v. Rodriquez, 84 N.M. 60, 499 P.2d 378 (Ct.App.1972).

*Shotgun Instruction*

The jury first retired at 5:00 p. m. They went to supper at 8:25 p. m. and returned at 9:10 p. m. The "shotgun instruction" was given at 9:55 p. m. The jury returned its verdict of guilty at 10:45 p. m.

Subsequently, defendant filed a motion for acquittal or new trial which was denied. Paragraph 6 of the motion read as follows:

"6. After the Jury had deliberated for some time and had been to supper, the Court on its own Motion returned the Jury to the Courtroom. No Reporter was present. The Court inquired as to the numerical division of the Jury if it could reply without disclosing which side was prevailing. The Foreman replied

that he could not so disclose without indicating the state of the deliberations. Thereafter, the Court delivered an additional instruction in the nature of a 'shotgun instruction'. Within 50 minutes, the Jury returned a verdict of Second Degree Murder. Defendant objects to this procedure. . . . "

The shotgun instruction given states:

"To aid you in the further consideration of the case, I instruct you that, although the verdict to which a juror agrees must, of course, be his own verdict, result of his own convictions, not mere acquiescence in the conclusions of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you calmly, dispassionately and candidly, with a proper regard and deference to the opinions of each other. In a large proportion of cases absolute certainty cannot be expected.

"You should consider that the case must at some time be decided by a jury; that you are selected in the same manner and from the same source which any future jury must be, and there is no reason to suppose that this case will ever be submitted to twelve men and women more intelligent, more impartial, or more competent to decide it, or that more and clearer evidence will be produced on the one side or the other. And with this in view, it is your duty to decide the case if you can conscientiously do so.

"In conferring together, you ought to pay proper respect to each other's opinions; and listen, with a disposition to be convinced, to each other's arguments; and if the larger number of your panel are for conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one that makes no impression on the minds of so many men, equally honest, equally intelligent, with himself, who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath.

"And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to, doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight and sufficiency of that evidence which fails to carry conviction to the minds of their fellow jurors."

Defendant asserts three contentions under this point: (1) the trial court recalled the jury on its own motion to ask for the numerical division; (2) no reporter was present to report the exchange between the trial court and the jury foreman; and, (3) the instruction was untimely given.

■ First, assuming the judge erred in asking for a numerical division of the jurors, such error was harmless. As indicated in defendant's own motion the foreman did not give any division. See State v. Darden (Ct.App.) 86 N.M. 198, 521 P.2d 1039, decided April 10, 1974.

■ Second, we see no prejudicial error in the failure to have a court reporter present at the reading of the instruction. Defendant and counsel were present. See State v. Brugger, 84 N.M. 135, 500 P.2d 420 (Ct.App.1972); N.M.R.Crim.Pro., 43 (b). The instruction itself is in the record. Defendant does not assert that any other prejudicially erroneous statements or actions, which are not part of the record, were made. We require this showing by defendant because he was present with counsel who could demand a record or make his own notes. Compare State v. Brugger, supra.

■■ Third, we see no abuse of discretion by the trial court in reading the instruction when he did. The actual deliberation time is one of various factors the trial court must weigh in determining whether to give the instruction. State v. Horton, 57 N.M. 257, 258 P.2d 371 (1953). We cannot say that the case was so complex or the deliberation time so short that we should overturn the decision of the trial

court made after he personally ascertained the state of the deliberations from the foreman.

■ Defendant also asserts that "error and prejudice" were "both illuminated" by the failure to make any reference in the instruction to the degrees of the offense charged. Apparently, the defendant feels the omission was confusing to the jury. We disagree. The trial court addressed itself only to a division between conviction and acquittal and did so adequately. State v. Manlove, 79 N.M. 189, 441 P.2d 229 (Ct.App.1968). The instruction, by its terms, did not pertain to a division as to degree and did not need to.

Affirmed.

It is so ordered.

LOPEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

*I respectfully dissent.*

In 1924, the late Justice Sam G. Bratton, while a member of the Supreme Court of New Mexico, opened his dissent in Bd. Com'rs Guadalupe Co. v. Dist. Ct. 4th Jud. Dist., 29 N.M. 244, 266, 223 P. 516, 523 (1924), as follows:

We find ourselves at the parting of the ways, and, since I cannot agree with the majority or go with them, it must result, as it did with Abraham and Lot in the days of old, that we "shall separate ourselves the one from the other"; the majority speaking for the court and registering its decree, while I must remain in the solitary and inhospital domain of dissent. I recognize that no dissenting opinion can ever be justified unless it is right; that even then it is most unavailing unless it results in arresting attention, exciting inquiry, provoking discussion, and ultimately leads to the ascertainment of the truth.

The question to decide is: Did defendant have a fair trial?

At the time of the alleged offense, defendant was 18 years of age, a graduate of Albuquerque High School who worked diligently in various occupations up to the time of trial. He had no previous criminal record and enjoyed a good reputation. We approach the grounds relied on for reversal.

(1) *The trial court denied defendant due process of law.*

On September 13, 1972, defendant signed a written statement which was the principal evidence against him. Prior to commencement of trial, the attorney for defendant examined the circumstances to determine whether a motion to suppress the written statement should be made to determine whether defendant had been given his Miranda Warnings before making any incriminating statements. An interview was had with the detective who was in charge of the investigation on the day defendant was taken into custody. The detective informed the attorney that no admission was made by defendant until *after* defendant's rights had been given to him. This interview was taped by defendant's attorney. At trial, however, the truth emerged. On direct examination, both detectives, who interrogated defendant before the written statement was obtained, testified that, *prior to the time defendant admitted he shot decedent, defendant had not been advised of his constitutional rights.* He was advised of his constitutional rights *after* he was arrested and taken to the Albuquerque Police Department for further investigation. Then the written statement was obtained.

Defendant's attorney, misled by the detective, filed no motion to suppress any oral or written statement before trial because no grounds were believed to exist. Defendant requested the right, out of the presence of the jury, to voir dire the detective before the trial continued. For the record only, the voir dire was allowed. The tape disclosed, as shown in the majority opinion, that the detective stated to defendant's attorney that he had advised defendant of his constitutional rights *before*

the admission was made that defendant shot the decedent. This advice by the detective was untrue.

Defendant moved for a mistrial which was denied.

We can *now* say that the *oral admission* defendant made at the threshold interrogation that defendant shot the decedent was not subject to Miranda Warnings. State v. Lopez, 79 N.M. 282, 442 P.2d 594 (1968). The *written statement* was made during custodial interrogation after Miranda Warnings were given, and it was therefore admissible in evidence.

But these matters are not before us on appeal. The question for decision is: When the state misleads defendant's attorney long before trial, and the attorney fails to seek a suppression of the oral and written statements, have the defendant's constitutional and statutory rights been invaded?

Our Rules of Criminal Procedure "are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration. . . . "

Rule 18(b) of the Rules of Criminal Procedure [Section 41–23–18(b), N.M.S.A.1953 (2nd Repl.Vol. 6, 1973 Supp.)] provides:

> A person aggrieved by a confession, admission or other evidence may move to suppress such evidence.

Rule 33(d), supra, provides:

> Any defense, objection or request which is capable of determination without a trial on the merits may be raised before trial by motion.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed. 2d 297 (1973). In Coppedge v. United States, 369 U.S. 438, 449, 82 S.Ct. 917, 923, 8 L.Ed.2d 21 (1962), the court said:

> When society acts to deprive one of its members of his life, liberty or property, it takes its most awesome steps. No general respect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt, eminently fair and sober criminal law procedures. The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged.

Fairness in administration means that those deprived of their statutory rights are denied due process. See McNeil v. Director, Patuxent Institution, 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972).

Despite State v. Lopez, supra, the Federal Bureau of Investigation has compiled an exemplary record of effective law enforcement by advising any suspect, at the outset of an interview, that he is not required to make a statement, that any statement may be used against him in court that the individual may obtain the services of an attorney of his own choice, and that he has a right to free counsel if he is unable to pay. In Miranda v. Arizona, 384 U.S. 436, 486, 86 S.Ct. 1602, 1634, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), the Supreme Court said:

> The practice of the FBI can readily be emulated by state and local enforcement agencies. The argument that the FBI deals with different crimes than are dealt with by state authorities does not mitigate the significance of the FBI experience.

See also, Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). *Miranda* and *Escobedo* were cited in State v. Lopez, supra.

The purpose of these citations is not to discredit State v. Lopez. The purpose is to show: (1) that defendant's attorney had the right to see that defendant had effective assistance of counsel. That this right was denied defendant, was forcibly presented in defendant's Brief-in-Chief. It does not need repetition here. (2) The right to a hearing before trial to determine whether the investigation of the detectives

was no longer a general inquiry into an unsolved crime but that it had focused on the defendant as a particular subject; whether defendant was under custodial interrogation at the time defendant's admission was obtained without warnings. Defendant testified that the detective said: "You know, Richard Cordova, we know how you were involved in his death." The denial of the above rights to defendant was a denial of due process. A mistrial should have been granted.

(2) *Substantial justice requires a reversal.*

Substantial justice requires that we lift the veil and take a peek. Heyde v. State Securities, Inc., 63 N.M. 395, 399, 320 P.2d 747 (1958). In every case, substantial justice must be done. State v. Salazar, 78 N.M. 329, 431 P.2d 62 (1967).

"The term 'substantial justice' has been defined in judicial opinions as justice administered according to rules of substantive law notwithstanding error of procedure which do not deprive litigants of substantive rights." Interstate Bankers Corporation v. Kennedy, 33 A.2d 165 (D.C. Mun.App.1943).

(a) *Defendant was denied a complete transcript on appeal.*

In the pre-appeal order, paragraph No. 2 states:

The defendant timely filed his notice of appeal and filed a praecipe requesting the entire transcript in this matter including the file and hearings on all motions in this case. *Since there was a pre-trial hearing in this matter, the praecipe was not complied with and this pre-appeal order superceded it.* (Emphasis added).

Rule 54(a) of the Rules of Criminal Procedure [Section 41–23–54(a), N.M.S.A.1953 (2nd Repl.Vol. 6, 1973 Supp.)] provides that "Appeals shall be allowed pursuant to the Rules of the Supreme Court of New Mexico governing appeals." See §§ 21–2–1(12) and 21–2–1(14), N.M.S.A.1953 (Repl.Vol. 4). Defendant was entitled to the complete record and all the proceedings and evidence in the cause. In a capital offense, defendant must not be denied the entire transcript. The record in a criminal case begins with the indictment and includes each and every step in the proceedings thereafter taken, up to and including actual trial and judgment. The burden is on the defendant to see that a proper record is made. Questions for review in this court are established only by the record, and any fact not so established is not before us. State v. Edwards, 54 N.M. 189, 217 P.2d 854 (1950); State v. Snow, 84 N.M. 399, 503 P.2d 1177 (Ct.App.1972).

The importance of the complete transcript can be seen from an examination of Rules of Criminal Procedure. For example, Rule 21(b) provides on arraignment that "The district attorney *shall* deliver to the defendant a copy of the indictment or information and *shall* then read the indictment or information to the defendant unless the defendant waives such reading. Thereupon the court *shall* ask the defendant to plead." (Emphasis added).

The transcript did not contain any reference to the arraignment. "[I]n capital and otherwise infamous crimes both the arraignment and plea are a matter of substance, and must be affirmatively shown by the record." Johnson v. United States, 225 U.S. 405, 32 S.Ct. 748, 56 L.Ed. 1142 (1911).

A peek into the record below shows only that "Defendant entered a plea of not guilty to the charge."

At the pre-appeal hearing, defendant's discussion and argument with the judge for a complete transcript, (not the judge who tried this case) demands a reversal of this case.

(b) *There was no proof of cause of death.*

In this homicide case, the state must prove beyond a reasonable doubt that the shot fired by defendant caused the death of decedent, State v. Armstrong, 61 N.M. 258, 298 P.2d 941 (1956); that death must be proved by direct expert evidence, State

v. Coulter, 84 N.M. 647, 506 P.2d 804 (Ct. App.1973); that death was the direct result of complications from the bullet wound, State v. Ewing, 79 N.M. 489, 444 P.2d 1000 (Ct.App.1968), or the cause of death from the shot can be proven by circumstantial evidence where the decedent died at the scene immediately after the shot was fired. State v. Coyle, 39 N.M. 151, 42 P.2d 770 (1935).

Defendant was shot on October 4, 1969. At about 4:10 a. m. the following morning, decedent was found by a police officer sitting on the sidewalk. An ambulance was called and decedent was taken to Presbyterian Hospital. A laparotomy was performed and no interabdominal injury was found. On October 7, 1969, he was admitted to the Bernalillo County Medical Center. The discharge summary was offered in evidence for what it was worth. The summary was dictated by a doctor who attended the decedent after his death. It showed that decedent was a heroin addict since 15 years of age. It showed that on October 20, 1969, 17 days after the shot was fired, decedent died while receiving physical therapy at the hospital. On October 21, 1969 a physician with a specialty in pathology performed an autopsy to determine the method and manner of death. He was the only doctor called. His conclusion was that death was caused by a blood clot in the main artery leading from the heart to the lungs. Without reference to hospital records, the doctor was then questioned as follows:

Q. How long after this injury to the spinal cord would paralysis occur?

A. I believe paralysis would be almost instantaneous, *although I am not qualified as a witness to testify on the clinical aspects of neurologic change.*

*    *    *    *    *    *

Q. Doctor, you indicate as a result of this injury to the spinal cord, there was paralysis of the lower extremities, the legs.

A. *I assume there was.* I didn't see the living patient.

*    *    *    *    *    *

Q. Doctor, . . . is it your expert opinion that but for the gunshot wound, the subsequent injury to the spine . . . was directly related to the cause of death?

A. Well, as I understand it now, you would like to know from me *whether I can directly connect a gunshot wound to the spine with the cause of death of this individual?*

Q. In your opinion, yes, doctor.

A. *If this gunshot wound of the spine caused paralysis* or inability of this individual to move his lower extremities for a sustained period of time, I believe that there is a causal connection between the gunshot wound of the spinal cord and the massive pulmonary embolism. (Emphasis added).

The trial court instructed the jury as follows:

You are instructed that before you may find defendant guilty of any of the offenses charged in the indictment, you must find beyond a reasonable doubt that the deceased's death was the direct result of a gunshot wound inflicted by the defendant.

This was the law of the case. There was no primary evidence that "The decedent's death was the direct result of a gunshot wound inflicted by the defendant."

(3) *Inquiry as to the numerical division of the jury is reversible error.*

The majority opinion holds, without any authority to suggest its statement, that court inquiry of the numerical division of the jurors was harmless error. The opposite is the law. It is prejudicial error per se.

Pirch v. Firestone Tire and Rubber Co., 80 N.M. 323, 326, 455 P.2d 189, 192 (1969) quotes from a decision of the Supreme Court of the United States. I re-quote the first and last sentences.

We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal. . . . Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

We continue the quotation from Brasfield v. United States, 272 U.S. 448, 450, 47 S.Ct. 135, 136, 71 L.Ed. 345 (1926).

> The failure of petitioners' counsel to particularize an exception to the court's inquiry does not preclude this court from correcting the error. (citations omitted). This is especially the case where the error, as here, affects the proper relations of the court to the jury, and cannot be effectively remedied by modification of the judge's charge after the harm has been done.

I repeat again, as I have heretofore, that the excuse of "harmless error" to affirm a conviction for second degree murder violates the duty and integrity of a court of review. Ipse dixit statements of the law must be omitted when imprisonment of a young man is at stake.

### (4) *The trial court erred on disclosure of the police informant.*

An informant had notified the detective that defendant was a suspect in the murder of decedent. The detective refused to disclose the identity of the informant. The detective testified that "to his best knowledge" the informant was not an eye witness. The trial court ruled during trial that "If the informant was not an eye witness, he won't have to be disclosed."

The standard fixed by the trial court was erroneous. "There is no fixed rule with respect to disclosure of the identity of an informant. . . ." The crime charged, possible defense, and possible significance of the informer's testimony are to be considered. State v. Baca, 84 N.M. 513, 505 P.2d 856 (Ct.App.1973). In State v. Rodriguez, 84 N.M. 60, 499 P.2d 378 (Ct.App.1973), the state's only witness did not know who the informer was when requested at the close of the state's case.

The proper procedure to determine disclosure of the identity of an informant is *In camera* proceedings to examine and cross-examine the detectives on the facts and circumstances surrounding knowledge of the informant and the informer's knowledge of the offense. In this way, the trial court can determine whether protection of the flow of information from an informer outweighs the defendant's right to prepare his defense. State v. Baca, supra; Roviaro v. United States, supra; McCray v. Illinois, 386 U.S 300, 87 S.Ct. 1056, 18 L. Ed.2d 62 (1967); Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), concurring opinion; Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), Harlan dissent.

During trial, the detective testified in open court that he interviewed the informer to learn that defendant was a possible suspect, re-contacted him to substantiate further information, and learned that defendant was involved in the shooting. The next day the detective contacted defendant and told him that they knew defendant was involved in the death of Richard Cordova.

This is not the time to weigh the balance: "the public interest in protecting the flow of information against the individual's right to prepare his defense." This is the time to state the erroneous decision of the trial court that the informant had to be an eye witness. The weighing of the balance can be determined if a new trial is granted.

### (5) *The "Shotgun Instruction" was reversible error.*

The "Shotgun Instruction" was reversible error. State v. Minns, 80 N.M. 269, 454 P.2d 355 (Ct.App.1969); U.J.I. 16.2; On Instructing Deadlocked Juries, 78 Yale L.J. 100 (1968). The note, after 42 pages, concludes:

> If some jurors were led, by an improper supplemental instruction, to overcome their values and vote guilty, the appellate court should not regard the error as "harmless," for it has distorted the result

and undercut the function of the jury's deliberations.

I agree.

This conviction should be reversed.